SEYMOUR WATERMAN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Waterman v. Commissioner
Docket Nos. 8699-72, 8700-72, 8701-72, 8743-72.
United States Tax Court
T.C. Memo 1975-209; 1975 Tax Ct. Memo LEXIS 157; 34 T.C.M. (CCH) 910; T.C.M. (RIA) 750209; June 30, 1975, Filed Alan Claman and Justin L. Goldner, for the petitioners. Alan R. Herson, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION Simpson, Judge: The Commissioner determined the following deficiencies in the petitioners' Federal income taxes: Petitioner
Docket No.
Year
Deficiency
Seymour Waterman
8699-72
1965
$ 164.00
1966
340.00
Pacific Hi-Temp
8700-72
FY1966
3,315.00
Hardware Co., Inc.
FY1967
5,498.00
Seymour Waterman and
8701-72
1967
14,197.00
Evelyn Waterman
Evelyn Waterman
8743-72
1965
165.00
1966
340.00 Some issues have been settled, and two issues remain for decision. We must *158 ascertain the fair market value of a computer donated to a college. In the event we determine that the computer's value exceeded its cost, then we must decide whether Mr. Waterman received a dividend from his wholly owned corporation when he made the donation. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The individual petitioners, Seymour Waterman and Evelyn Waterman, husband and wife, had their legal residence in Encino, Calif., at the time of filing their petitions herein. Mr. and Mrs. Waterman filed their Federal income tax returns, using the cash method of accounting, for the years 1965 through 1967 with the District Director of Internal Revenue, Los Angeles, Calif. They filed individual returns for 1965 and 1966 and a joint return for 1967. The corporate petitioner, Pacific Hi-Temp Hardware Co., Inc. (Pacific), had its principal place of business in Burbank, Calif., at the time of filing its petition herein. Pacific filed its Federal income tax returns, using the accrual method of accounting, for its fiscal years 1966 and 1967 with the District Director of Internal Revenue, Los Angeles, Calif. Mr. Waterman was the sole shareholder *159 of Pacific, which, in 1966 and 1967, was a distributor of aircraft parts. Mr. Waterman received a circular from the Atomic Energy Commission (AEC) soliciting bids on an International Business Machines (IBM) 704 computer. He submitted a bid, and in June 1967, Pacific paid the AEC $1,077.77 for the computer. Mr. Waterman had Pacific make the payment because he believed the AEC preferred doing business with a corporation rather than with an individual. On Pacific's books of account, the payment was charged to his personal loan account and was repaid by him in December 1967. Mr. Waterman paid $1,100 for transporting the computer to California, although the invoice for such expense had been sent to Pacific. Mr. Waterman acquired the computer because he was interested in developing a separate computer business. However, he did not have the time to pursue such plans and put the computer in storage. In December 1967, Mr. Waterman donated the computer to the San Fernando Valley State College (the college). The computer was constructed in 1957 and originally sold for approximately $1,900,000. Since that time, there have been developed newer models of computers that were more efficient *160 and had greater capacities. Yet, the computer donated to the college was in an operable condition and conformed to IBM's strict performance standards. It was altogether satisfactory for the purpose of instructing engineering students in computer design and was still in use in 1971. The director of the college's trust fund wrote to Mr. Waterman on December 27, 1967, acknowledging the donation and stating that he estimated that the computer was worth $25,000. James Farmer, the director of the college's Institutional Studies and Computer Center, had made the evaluation for the college. Prior to working for the college, Mr. Farmer had been employed by the Rand Corporation, where he was responsible for determining the costs of existing and proposed computer equipment. He also has been responsible for buying and valuing computer equipment used by the California state university school system. In making his evaluation of the computer for the college, Mr. Farmer contacted potential purchasers of, and persons experienced with, the 704 computer. He learned of a corporation that had recently purchased a 704 computer for $25,000 in order to export it. In addition, he was advised that the computer *161 had a trade-in value of $20,000 to $25,000. Considering the good condition of the computer, he concluded in 1967 that, conservatively, it had a value of at least $25,000. Subsequently, Mr. Farmer determined that, in 1967, the computer had a value of $44,000 based on the aggregate value of its individual components. In 1967, the market for 704 computer components was larger than that for 704 computers, and such components commanded higher prices as separate items than they did as parts of a working computer. Mr. Farmer considered that the price for which the AEC had sold the computer in June 1967 was not indicative of its fair market value, since the circular soliciting bids was distributed in a restricted market, and since it would have been difficult, or impossible, for any bidder to determine the condition of the computer before submitting his bid. The computer was also appraised by James B. Reidy, Jr., who had more than 15 years experience selling and installing IBM computers, including the 704. He also had experience advising sellers and purchasers of computers concerning computer values and prices. In making his evaluation, he examined sales manuals, maintenance charge schedules, *162 and magazine advertisements. He concluded that, in 1967, the components of the computer were worth $42,000 and that the computer's value ranged between $35,000 and $50,000. Mr. Reidy also considered that the price paid the AEC for the computer in June 1967 did not reflect its value because such sales occurred in an artificial market. On their joint 1967 Federal income tax return, Mr. and Mrs. Waterman claimed a charitable deduction of $25,000 for the donation of the computer to the college. In his notice of deficiency, the Commissioner allowed only the amount actually spent for the computer and for transportation expenses. In his amended answer, the Commissioner determined that, in the event it was decided that the computer's value was greater than the amounts actually spent on buying and transporting it, Mr. Waterman had received a dividend to the extent of the difference. At trial, the petitioners amended their petition alleging that there had been an overpayment in Federal income taxes for 1967, since the value of the computer was greater than that claimed in their return for such year. The Commissioner made other adjustments which have been settled. OPINION We must first *163 ascertain the fair market value of the computer when it was donated to the college. The amount of a charitable contribution of property is the property's fair market value. Sec. 170(a)(1), Internal Revenue Code of 1954; sec. 1.170-1(c), Income Tax Regs. In support of their position, the petitioners relied upon the testimony of Mr. Farmer and Mr. Reidy, who had extensive experience with marketing and valuing computers and proffered sufficient testimony from which the value of the computer can be ascertained. Cf. Massey-Ferguson, Inc.,59 T.C. 220 (1972). Mr. Reidy was of the opinion that in 1967, the fair market value of the computer was between $35,000 and $50,000 and that the aggregate value of its components was $42,000. Mr. Farmer's opinion was that the total value of the components was $44,000 at that time. Yet, the value of the components exceeded the value of the computer as such in 1967, and the college acquired the computer for the purpose of using it as such, and not for the purpose of selling its components. Although Mr. Farmer initially found that the value of the computer was $25,000, both he and Mr. Reidy later concluded that *164 the computer was worth more than that amount in 1967. Mr. Farmer stated that in 1967 he considered such valuation to be conservative. Furthermore, it was based on the trade-in value of the computer, and the college did not want the computer for that purpose, but to use it for instruction in its engineering department. Also, in arriving at that valuation, Mr. Farmer may have considered the report that a 704 computer had been purchased for $25,000 for the purpose of export, but the full circumstances surrounding the reported purchase were not available and, consequently, the report is entitled to little weight in judging the fair market value of the computer. Cf. Bernard Goss,59 T.C. 594 (1973). The only evidence offered by the Commissioner to contradict the testimony of Mr. Farmer and Mr. Reidy was the information concerning the amount paid for the computer and for its transportation to California. The price paid for property in an arm's length transaction is persuasive evidence of its fair market value at the time of the transaction. Ambassador Apartments, Inc.,50 T.C. 236 (1968), affd. per curiam 406 F. 2d 288 (2d Cir. 1969). However, *165 both Mr. Farmer and Mr. Reidy were of the opinion that the amount paid the AEC for the computer did not reflect its fair market value, and their testimony on this point was persuasive. Daniel S. McGuire,44 T.C. 801 (1965). Taking into consideration all the evidence of record in this case, we conclude and hold that the fair market value of the computer at the time of its donation to the college was $35,000. Cf. Hamm v. Commissioner,325 F. 2d 934 (8th Cir. 1963), affg. a Memorandum Opinion of this Court. Since we have found that the computer's value was far in excess of the amounts spent on purchasing and transporting it, we reach the Commissioner's alternative contention. He argued that Pacific purchased and owned the computer and transferred it to Mr. Waterman as a dividend when he donated it to the college. Thus, he asserts that if the value of the computer exceeded its cost, the excess was a dividend to Mr. Waterman. Because the Commissioner first raised this issue in his amended answer, he has the burden of proof with respect to such issue. Rule 142(a), Tax Court Rules of Practice and Procedure; Morris M. Messing,48 T.C. 502 (1967). *166 The evidence shows that Mr. Waterman purchased the computer for the purpose of engaging in a new and separate business and only used Pacific to make the actual purchase because he believed the AEC would prefer to sell the computer to a corporation rather than to an individual. Mr. Waterman ultimately paid for the computer, and he paid for transporting the computer to California. Such evidence indicates that Pacific was only Mr. Waterman's agent and based on the evidence of record, we conclude and hold that the Commissioner has failed to carry his burden of establishing that Mr. Waterman received a dividend as a result of the donation of the computer to the college. Cf. John E. Palmer,44 T.C. 92 (1965), affd. per curiam 354 F. 2d 974 (1st Cir. 1965). Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Pacific Hi-Temp Hardware Co., Inc., docket No. 8700-72; Seymour Waterman and Evelyn Waterman, docket No. 8701-72; Evelyn Waterman, docket No. 8743-72.↩