*Decisions will be entered under Rule 50.*

BERNARD GOSS AND NANCY C. GOSS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3337–70. Filed January 30, 1973.

*George N. Plastiras,* for the petitioners.
*G. Phil Harney,* for the respondent.

·WILES, *Judge:* Respondent has determined a deficiency in petitioners' income tax of $1,483.27 for the taxable year 1967. The issues for decision are:

(1) Whether petitioners are entitled to a charitable deduction for petitioners' donation of two essays to a certain charity, and, if so, what the fair market value of those essays was at the time of donation.

(2) Whether certain expenses incurred by petitioner for travel in 1967 are deductible as ordinary and necessary business expenses.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners are Bernard Goss (hereinafter referred to as petitioner) and Nancy C. Goss, husband and wife, who resided in Little Rock, Ark., at the time of the filing of the petition herein. They filed a joint Federal income tax return for the taxable year 1967 with the district director of internal revenue in Little Rock, Ark.

During 1960 and 1961 petitioner was employed by the Federal Reserve Bank of Dallas, Tex., as an industrial economist. From 1963 to 1966 petitioner was an assistant professor of economics, finance, and

marketing at St. Edward's University, Austin, Tex. From June 1966 to January 29, 1967, petitioner was employed as a technical assistance officer and economist at the Austin, Tex., regional office of the Economic Development Administration. Throughout the remainder of 1967 petitioner was employed as an economic research specialist with the Ozarks Regional Commission, Little Rock, Ark.

On November 10, 1967, petitioner made a gift of two essays to the National Council of Negro Women, a qualified charitable organization. The petitioner prepared these two essays, which are entitled "The Negro Woman's Income Gap" and "Urban Spatial Economic/Social Inter-Relationships." The purpose of these essays was to provide the National Council of Negro Women with policies and objectives regarding the creation of adequate and positive economic opportunities for low-income groups. The essays were based on the results of a survey conducted by petitioner.

On his 1967 Federal income tax return, petitioner claimed a deduction for charitable contribution of the essays to the National Council for Negro Women. In claiming that deduction petitioner reported a fair market value of $1,500 for the essays. Respondent disallowed the deduction claimed with respect to the donation of the essays except for $50 allowed for certain out-of-pocket expenses. In his amended petition, petitioner reported a fair market value of $2,250 for the essays.

On his 1967 return, petitioner also claimed a business expense deduction in the amount of $1,246, part of which was expended for travel. Respondent disallowed the claimed deduction with respect to certain travel expenses. Although the parties stipulated that the travel expenses in issue amounted to $860.99, the petitioner now contends that the travel expenses incorrectly disallowed by the respondent amounted to $728.14.

OPINION

Section 170(a), I.R.C. 1954,[1] allows as a deduction any charitable contribution when payment is made within the taxable year. Section 170(c) defines a charitable contribution as a contribution or gift to or for the use of certain specified classes of organizations. Respondent agrees that the National Council of Negro Women qualifies as a member of these specified classes.

The regulations provide that no deduction is allowable pursuant to section 170 for contribution of services. Sec. 1.170–2(a)(2), Income Tax Regs. The regulations also provide that if a contribution is made in property other than money, the amount of the deduction is

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise indicated.

determined by the fair market value of the property at the time of the contribution. The regulations define fair market value as the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. Sec. 1.170–1(c)(1), Income Tax Regs.

Respondent contends that the donation does not qualify for a charitable deduction because it was in the nature of services rather than of property. Respondent also contends that even if the donation qualifies for a charitable deduction, petitioner has failed to establish the fair market value of the donation.

We held in *John R. Holmes*, 57 T.C. 430 (1971), that the donation of two films by the taxpayer who produced them to certain qualified charities constituted a contribution of property, and not of services. The taxpayer, an independent film producer, showed the completed films on a television station before donating them to the charities.

One film, donated to a hospital, was based on a musical comedy stage show, the purpose of which was to raise funds for the cardiac center at the hospital. The other film, donated to a boys' club, depicted the boys' club's various activities and showed the poor condition of its facilities.

We believe that the facts in the present case are analogous to the facts in *Holmes*. In both situations, petitioner donated artistic properties that he himself had created. In *Holmes* we noted that the donated film was something different from the petitioner's services and the unprocessed film. Similarly, the completed manuscript was something different from the petitioner's services and the blank paper. In both cases the donor maintained physical ownership over the property before it was donated. Accordingly, we conclude that the donation of artistic property, whether it be a film production or an essay, constitutes a donation of property rather than of services. We therefore hold that petitioner is entitled to a deduction under section 170 for his donation of the two essays.[2]

The amount of the deduction to which petitioner is entitled is determined by the fair market value of the essays at the time of the contribution. What the fair market value of a piece of property is at a given date is a question of fact, to be resolved from a consideration and weighing of all the relevant evidence in the record. *Philip Kaplan*, 43 T.C. 663 (1965). Although petitioner presented testimony at trial as to the fair market value of the essays, respondent failed to call any witnesses and failed to present any evidence regarding fair market value.

---

[2] A contrary result probably would have been reached if the property in issue had been donated after July 25, 1969, which was the effective date of certain amendments to sec. 170(e) and sec. 1221 by the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487.

Petitioner testified that he charged $150 per day as a consulting fee, that he worked on the essays for 15 days and that the value of the essays therefore is $2,250. We are unable to accept petitioner's argument regarding the value of the essays. Petitioner testified that prior to the contribution of the essays he had been employed as a consultant for a fee of $150 per day during April 1967. In his Federal income tax return for 1967, petitioner reported $150 as income from consulting work. Thus, petitioner contends that the value of his services in writing the essays should be based on a fee which he had charged for only 1 day prior to the donation of the essays. We are not persuaded that this single instance provides a proper basis to value the petitioner's services as a consultant.

Petitioner also testified that if the essays had been contracted for in an open market, they would have produced a bid of between $10,000 and $20,000. The basis for petitioner's opinion was his previous experience in administering approximately $3 million worth of technical assistance contracts for the Ozarks Regional Commission. Petitioner, however, did not have final grant authority with regard to these technical assistance contracts. Furthermore, petitioner presented no evidence regarding the similarity between the essays in issue and the work product specified in the technical assistance contracts that he helped administer. We are not persuaded by petitioner's self-serving and uncorroborated testimony.

On the basis of the entire record, and keeping in mind that petitioner has the burden of proof, we have determined that the essays had a value of $500 at the time they were donated to the National Council for Negro Women.

Section 274 provides in part that no deduction shall be allowed under section 162 or 212 for any traveling expenses unless the taxpayer substantiates, by adequate records or by sufficient evidence corroborating his own statement, the amount of the expense, the time and place of the travel, and the business purpose of the travel. Petitioner contends that he expended $728.14 for travel between Little Rock, Ark., Oklahoma City, Okla., and Austin, Tex., during the period of February 1967 through May 1967. Respondent concedes that this amount was actually spent for travel during 1967 but argues that petitioner has failed to establish the business purpose of the travel. Petitioner testified that the purpose of these trips related to his business. Petitioner has failed, however, to present adequate records or corroborating evidence to substantiate the business purpose of the travel. See *William F. Sanford*, 50 T.C. 823 (1968), affirmed per curiam 412 F. 2d 201 (C.A. 2, 1969), certiorari denied 396 U.S. 841 (1969). Under these circumstances, petitioner is not entitled to any deductions with respect to his claim for travel expenses.

*Decision will be entered under Rule 50.*