WILLIAM W. GRANT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 13985–79.     Filed May 6, 1985.

William W. Grant, pro se.
*Robert A. Miller*, for the respondent.

CHABOT, *Judge*: Respondent determined deficiencies in Federal individual income taxes and additions to tax under section 6653(a)[1] as follows:

| Year | Deficiency[2] | Additions to tax sec. 6653(a) |
|------|------------|-------------------------------|
| 1972 | $3,660.22 | $183.01 |
| 1973 | 3,085.21 | 154.26 |
| 1974 | 3,378.87 | 168.94 |

After concessions by both parties, the issues for decision[3] are as follows:

(1) Whether the value of uncompensated legal services performed by petitioner for charitable, governmental, religious, and educational organizations is deductible under section 170;

(2) Whether the value of services performed by petitioner in a divorce proceeding, in excess of the compensation received by petitioner, is deductible as a business expense under section 162;

(3) Whether payments made by petitioner to his wife during 1972 and 1973 are deductible under section 215;

(4) Whether expenses incurred by petitioner in connection with his former residence are deductible under section 212; and

(5) Whether petitioner is liable for an addition to tax under section 6653(a) for each of the years in issue.

FINDINGS OF FACT

Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

When the petition was filed in the instant case, petitioner resided in Oakland, Maryland. For 1972 through 1974, petitioner was a cash basis taxpayer.

---

[1]Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1954 as in effect for the years in issue.

[2]Of these amounts, self-employment taxes under chapter 2 are $573.19 for 1972, $535.50 for 1973, and $532.03 for 1974; the remaining amounts are chapter 1 income taxes.

[3]The medical expense adjustment as to 1974, and the self-employment taxes as to 1972, 1973, and 1974, are derivative and depend on settled issues and our resolution of issues in dispute.

*Legal Services*

Petitioner is a Maryland attorney and during the years involved was engaged in private practice in Oakland.

Petitioner served as attorney to the mayor and town council of Oakland (hereinafter sometimes referred to as the Oakland government), and received $5,342.01, $1,571.10, and $4,670.00 as compensation for legal services performed in 1972, 1973, and 1974, respectively. These amounts were reported as income on the appropriate years' tax returns. During these 3 years, petitioner also performed legal services for the Oakland government for which he was not compensated. Petitioner did not report the value of these uncompensated legal services as income for 1972, 1973, or 1974. On the Schedule C's of his tax returns for 1972, 1973, and 1974, petitioner deducted $3,042, $1,440, and $1,800, respectively, for "Municipal Work"; these amounts represent the value of the time he spent performing uncompensated legal services for the Oakland government. These uncompensated legal services were performed exclusively for public purposes. Respondent disallowed the deductions on account of the uncompensated legal services.

By appointment of the Governor of Maryland, during 1972 and 1973, petitioner served on the Board of Visitors of Frostburg State College. Furthermore, during 1973, by designation of the Secretary of Natural Resources of Maryland, petitioner served on the Advisory Committee of the Ohio River Basin Commission. During 1972 and 1973, petitioner performed services for various governmental, charitable, educational, and religious organizations for which he was not compensated. Petitioner did not include the value of these services as income for these years. On his tax returns for 1972 and 1973, petitioner deducted $1,126 and $3,478, respectively, as charitable contribution deductions; these amounts represent the value of the time he spent performing uncompensated legal services for these organizations. All of the organizations for which petitioner performed these uncompensated legal services were eligible to receive deductible charitable contributions under section 170. These uncompensated legal services that were performed for governmental bodies were performed exclusively for public purposes. Respondent disallowed the deductions on account of the uncompensated legal services.

In March 1971, petitioner agreed to serve as court-appointed counsel for a client of the Mental Health Section of the Garrett County Department of Health[4] in connection with a divorce proceeding instituted against the client under the then-new no-fault divorce law of Maryland. Petitioner's legal services in that divorce case involved more than 440 hours over about 3 years and included three trials in Prince George's County and several appeals. On his tax return for 1974, petitioner claimed a business bad debt deduction for $12,054.36—the amount by which (a) the sum of (1) the fair market value of his legal services ($13,332) and (2) his out-of-pocket expenses ($704.67) exceeded (b) the $1,982.31 he received for that divorce case. Respondent disallowed this bad debt deduction.

*Alimony Payments*

On April 4, 1972, petitioner and his wife, Lucille, separated. After their separation, petitioner's divorce counsel advised Lucille's divorce counsel in a letter dated May 30, 1972, that petitioner would provide Lucille with direct support payments.[5] In a letter to petitioner dated June 8, 1972, petitioner's divorce counsel states that he would like to establish with the judge in the divorce action the amount of cash support that petitioner would provide to Lucille.[6]

By a letter dated August 18, 1972, Lucille's counsel advised petitioner's counsel that Lucille was receiving $125 per week[7] and objected to the inadequacy of this amount. During 1972, petitioner made 27 weekly $125 support payments to Lucille, totaling $3,375. Petitioner paid Lucille another $125 on January 23, 1973. No support payments were made between January 23, 1973, and May 29, 1973, because Lucille went to California. She returned sometime in April 1973. The court

[4]Oakland is the county seat of Garrett County.

[5]The letter states that "However, naturally, Mr. Grant will continue to provide Mrs. Grant with direct support monies for herself and the child."

[6]The letter states that "After the hearing, I would like to be in a position to get something established with him [the judge in the divorce proceeding] insofar as what amount of support you would be providing in cash form to your wife."

[7]The letter states that "As you know, Mrs. Grant has been receiving weekly, a support check in the amount of $125.00. Her experience to date indicates that this is inadequate for her needs and that of Rebecca Linn. Essentially, this is true because Mr. Grant's budget overlooks some major areas of expense and underestimates others."

then awarded her alimony pendente lite in the amount of $200 per month.

During the period May 29, 1973, through July 28, 1973, petitioner made payments to Lucille totaling $700.[8]

On July 16, 1973, petitioner and Lucille were divorced a mensa et thoro by order of the Circuit Court for Garrett County, Maryland.

In July 1974, there was a hearing on the divorce a vinculo matrimonii. The final divorce decree was enrolled in 1975.

No written separation agreement was entered into between petitioner and Lucille. The $3,375 that petitioner paid in 1972 and the $125 that petitioner paid on January 23, 1973, were not paid under a written separation instrument.

### Maintenance Expenses

On April 4, 1972, petitioner vacated a house in Oakland, which was owned jointly by petitioner and Lucille. This house had been theretofore used as a residence by both petitioner and Lucille. Lucille remained on the premises and in September 1972 she rented the lower part of the house to a tenant.

The tenant paid the rent directly to Lucille, who kept the rent. The expenses incurred to maintain the premises were paid by Lucille or the tenant. Petitioner did not include in income any rental income from the house for any of the years in question. Petitioner was not aware of the rental details and did not have any idea of the amount of rent collected by Lucille. In January 1973, Lucille vacated the premises, and the tenant remained in possession of the house.

In July 1974, there was a hearing on petitioner's and Lucille's final divorce decree. Sometime between July and December 1974, the tenant also vacated the premises. Since neither Lucille nor the tenant maintained the premises after the tenant departed, petitioner began paying the maintenance expenses for the house because he feared the insurance would be canceled and the utility services terminated. Petitioner intended to sell the house as soon as the divorce proceeding was concluded.

---

[8] Respondent concedes that these payments are deductible as alimony in 1973.

On his 1974 tax return, petitioner deducted the expenses shown in table 1, which he paid in connected with the upkeep and maintenance of the house.

Table 1

| | |
|---|---:|
| Insurance | $134.00 |
| Cleaning | 239.10 |
| Repairs | 98.36 |
| Gas | 168.93 |
| Electricity | 190.68 |
| Water | 43.15 |
| Movers | 90.00 |
| | 964.22 |

In 1975, shortly after the final divorce decree was enrolled, the house was sold at a partition proceeding by the Circuit Court for Garrett County. The sale resulted in a capital gain which was reported on petitioner's 1975 tax return.

Petitioner abandoned his personal use of the house before he paid the expenses listed in table 1. Petitioner did not hold the house for the production of income when he paid these expenses.

## Negligence, Etc.

Petitioner, who prepared his own tax returns for the years in issue, was aware that section 1.170A–1(g), Income Tax Regs., prohibited a charitable contribution deduction for a contribution of services; he deliberately disregarded the regulation, because he believed that it was invalid.

### OPINION

## I. Charitable Contributions

In general, petitioner is entitled to deduct, for any year, any contribution or gift to or for the use of any of certain types of organizations, if payment of the contribution or gift is made within that year. Secs. 170(a)(1) and 170(c) (opening flush language).[9] The parties agree that petitioner's services were

---

[9]SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

(a) ALLOWANCE OF DEDUCTION.—

   (1) GENERAL RULE.—There shall be allowed as a deduction any charitable contribution (as

performed for eligible donee organizations (and, in the case of governmental donees, that the services were performed for exclusively public purposes) and also agree as to the value of the services.[10]

Petitioner maintains that he is entitled to deduct under section 170 the value of his uncompensated legal services to the Oakland government for 1972, 1973, and 1974 (originally deducted as business expenses) and the value of his uncompensated legal services in 1972 and 1973 to other organizations eligible to receive charitable contributions. He contends that section 1.170A–1(g), Income Tax Regs., prohibiting such deductions is invalid. Alternatively, petitioner argues that (1) his services coalesced in the various legal documents he delivered to the charitable organizations which constitute a deductible contribution of property under section 170, and (2) the value of petitioner's services are determinable on the record in the instant case and therefore general difficulties in valuation do not constitute a good reason for refusing to allow the specific deductions here in dispute.

Respondent maintains that the regulation is valid. He contends that a longstanding regulation which applies to a subsequently reenacted statute is treated as having received congressional approval and has the effect of law. Respondent further argues that even if petitioner's services are treated as having coalesced in a physical product, petitioner still is not entitled to a charitable contribution deduction, because of the effect of section 170(e)(1)(A).

We agree with respondent.

---

defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate.

\*   \*   \*   \*   \*   \*   \*

(c) CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

[The subsequent amendment of this provision by sec. 1906(b)(13)[sic](A) of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520, 1834, does not affect the instant case.]

[10]

|  | Oakland government | Other donees |
|---|---|---|
| 1972 | $3,042 | $1,126 |
| 1973 | 1,440 | 3,478 |
| 1974 | 1,800 | - - - |

## A. Regulation—Application

Section 1.170A–1(g), Income Tax Regs.,[11] prohibits a charitable contribution deduction for a contribution of services. See *Cupler v. Commissioner*, 64 T.C. 946, 954 (1975). The disputed deductions are for the value of petitioner's uncompensated legal services.[12]

We conclude that, under section 1.170A–1(g), Income Tax Regs., petitioner is not entitled to the disputed deductions.

Petitioner contends that "the value of his services would have coalesced also with the petitioner's output of deeds, opinion letters, reports, legislative drafts, pleadings, resolutions, and ordinances, etc., delivered to the various charitable recipients." Petitioner points to conceptual difficulties in drawing a line separating property from services. To this we make three responses.

*Firstly*, we acknowledge that such conceptual difficulties exist. See *Holmes v. Commissioner*, 57 T.C. 430, 437 (1971). However we do not believe it is difficult to determine that what petitioner produced is on the services side of the property-services line.[13] We do not believe that the deeds, opinion letters, etc., prepared by petitioner fall on the same side of the line as the original music manuscripts dealt with in *Jarre v. Commissioner*, 64 T.C. 183 (1975); the cataract machine and heart-lung machine dealt with in *Cupler v. Commissioner, supra*; the original cartoons and manuscripts dealt with in *Mauldin v. Commissioner*, 60 T.C. 749 (1973); or the movie films dealt with in *Holmes v. Commissioner, supra*—a sampling of the cases petitioner cites in support of his argument. Of the cases cited by petitioner, *Goss v. Commissioner*, 59 T.C.

---

[11]Sec. 1.170A-1(g), Income Tax Regs., provides as follows:

(g) *Contributions of services.* No deduction is allowable under section 170 for a contribution of services. However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution. For example, the cost of a uniform without general utility which is required to be worn in performing donated services is deductible. Similarly, out-of-pocket transportation expenses necessarily incurred in performing donated services are deductible. Reasonable expenditures for meals and lodging necessarily incurred while away from home in the course of performing donated services also are deductible. For the purposes of this paragraph, the phrase "while away from home" has the same meaning as that phrase is used for purposes of section 162 and the regulations thereunder.

[12]Petitioner claimed other charitable contribution deductions, evidently for cash or checks; these deductions have not been challenged by respondent.

[13]As to our obligations regarding line-drawing, see, e.g., *Harrison v. Schaffner*, 312 U.S. 579, 583–584 (1941).

594 (1973), is the only one that approaches closely the property-services line. Goss made a gift of two specific essays to a qualified donee organization. The essays were based on the results of a survey that Goss conducted. We noted that Goss "maintained physical ownership over the property before it was donated" to the organization. 59 T.C. at 596. In contrast, the record in the instant case does not specify the particular documents transferred to the donee organizations, nor is there any evidence that petitioner ever maintained physical ownership over the documents he refers to.[14] We do not deny that there are many occasions when a lawyer's documents may have historic value[15] or perhaps a fair market value resulting from interest by collectors. However, nothing in the record in the instant case would support a finding that any of the documents drafted by petitioner falls into either of the foregoing categories.

*Secondly*, on his tax returns for each of the years in issue, petitioner described the "product" of his business activity as "Legal Services", and not as documents. We have no reason to believe that petitioner's charitable legal work resulted in a different "product" from that of his business legal work. Also, the stipulations speak of petitioner performing uncompensated "services" or "legal services" for the donee organizations; the stipulations do not speak of contributing documents to the organizations.

*Thirdly*, even if petitioner could properly be said to have contributed property, rather than services, then section 170(e)[16] as modified by the Tax Reform Act of 1969, would

---

[14]We note that, in deciding *Goss v. Commissioner*, 59 T.C. 594 (1973), in part for the taxpayers therein, the Court opined that amendments to secs. 170(e) and 1221 by the Tax Reform Act of 1969 probably would require a different result as to contributions made after July 25, 1969. 59 T.C. at 596 n. 2. A similar caution appears in other cases petitioner relies on. See *Holmes v. Commissioner*, 57 T.C. 430, 438–439 (1971); *Mauldin v. Commissioner*, 64 T.C. 749, 758 n. 3 (1973); *Jarre v. Commissioner*, 65 T.C. 183, 184 n. 2 (1975). In the instant case, the contributions are claimed for 1972, 1973, and 1974.

[15]E.g., property (such as that prepared by a lawyer occupying public office) of the sort that gave rise to the provisions of secs. 201(g)(1)(B) and 514 of the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487, 564, 643.

[16]Sec. 170(e) provides, in pertinent part, as follows:

SEC. 170 CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

   (e) CERTAIN CONTRIBUTIONS OF ORDINARY INCOME AND CAPITAL GAIN PROPERTY.—

     (1) GENERAL RULE.—The amount of any charitable contribution of property otherwise taken into account under this section shall be reduced by * * *

      (A) the amount of gain which would not have been long-term capital gain if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of such contribution) * * *

appear to eliminate any deduction by petitioner. (See note 14 *supra*.)

We conclude that petitioner's uncompensated legal services did not coalesce in property that was the subject of charitable contributions. We conclude that the charitable contributions in dispute were contributions of services, within the meaning of section 1.170A–1(g), Income Tax Regs.

We hold for respondent on this issue.

*B. Regulation—Validity*

The Supreme Court, in *Commissioner v. Portland Cement Co. of Utah*, 450 U.S. 156, 169 (1981), provided the following instructions for testing the validity of a regulation:

regulations command our respect, for Congress has delegated to the Secretary of the Treasury, not to this Court, the task "of administering the tax laws of the Nation." *United States v. Cartwright*, 411 U.S. 546, 550 (1973); accord, *United States v. Correll*, 389 U.S. 299, 307 (1967); see 26 U.S.C. § 7805(a). We therefore must defer to Treasury Regulations that "implement the congressional mandate in some reasonable manner." *United States v. Correll, supra*, at 307; accord, *National Muffler Dealers Assn. v. United States*, 440 U.S. 472, 476–477 (1979). To put the same principle conversely, Treasury Regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948); accord, *Fulman v. United States*, 434 U.S. 528, 533 (1978); *Bingler v. Johnson*, 394 U.S. 741, 749–751 (1969). * * *

In analyzing the regulation, it may be helpful to consider the following hypothetical. Physician A works without compensation for 1 day at a charitable hospital's clinic. These services are valued at $500. Physician B works for 1 day at his or her usual practice, and contributes the day's net fees (also $500) to the same hospital; the hospital uses that contribution to hire physician C to work for 1 day at its clinic. As an economic matter, A and B are even on the day's work. The hospital has had the benefits of a day's work from each of them (directly from A, indirectly from B). Yet, petitioner would have us declare that A is entitled to reduce his or her other taxable income by $500 (since A's services for the hospital do not generate any taxable income for A) while B is in effect permitted only to offset the $500 of net fees received. We may assume that the Congress has the constitutional power to make this distinction, favoring the services contributor over the cash contributor. However, we do not find anything in the

statute or the legislative history to convince us that the Congress has in fact made this distinction. Respondent's regulation has the effect of giving essentially the same "bottom-line" tax treatment to situations which produce essentially the same "bottom-line" economic results and charitable benefits. Petitioner's approach would require us to invalidate a regulation in order to create vastly different tax results from essentially equivalent sets of facts.

We conclude that respondent's regulation embodies a reasonable interpretation of the statute. Petitioner has not pointed us to any conflict between the statute or the legislative history, on the one hand, and the regulation on the other hand. The regulation meets the Supreme Court's test for validity. See *Commissioner v. Portland Cement Co. of Utah, supra; Jewett v. Commissioner,* 455 U.S. 305, 318 (1982); *Durbin Paper Stock Co. v. Commissioner,* 80 T.C. 252 (1983); *Friedman Foundation, Inc. v. Commissioner,* 71 T.C. 40 (1978). Compare *Commissioner v. Engle,* 464 U.S. 206, 224–225 (1984), with *Bob Jones University v. United States,* 461 U.S. 574, 596–597 (1983), as to the deference due to *proposed* regulations, and the deference due to long-standing administrative interpretations.[17]

We hold for respondent on this issue.

## II. Business Expenses

Petitioner maintains that the value of his legal services rendered in the divorce proceeding for which he received no compensation is deductible as a business expense under section 162, since the resultant publicity helped his law practice and services were performed for this purpose.[18] He argues that performance of assigned pro bono publico work,

---

[17]In O.D. 712, 3 C.B. 188 (1920), respondent ruled that "The value of services rendered to charitable institutions may not be allowed as a deduction under * * * [sec. 214(a)11 of the Revenue Act of 1918]." After the enactment of the Internal Revenue Code of 1954, this position was reflected in sec. 1.170–2(a)(2), Income Tax Regs., as follows: "No deduction is allowable for contribution of services." This regulation was adopted Mar. 13, 1958, by T.D. 6285, 1958–1 C.B. 127, 134. Sec. 170 was substantially revised by sec. 201(a) of the Tax Reform Act of 1969 (Pub. L. 91–172, 83 Stat. 487, 549), without any indication that the Congress disapproved of the regulation. The present regulation (note 11 *supra*) was adopted Oct. 3, 1972, by T.D. 7207, 1972–2 C.B. 106, 118.

[18]On his 1974 tax return, petitioner deducted the value of his uncompensated services as a business bad debt. Evidently he has abandoned this contention, consistent with long-established law that a bad debt deduction is not to exceed the taxpayer's basis in the debt. E.g., *Swenson v. Commissioner,* 43 T.C. 897, 899 (1965).

such as the divorce proceeding, is a requirement of his trade or business, and so he is entitled to deduct the fair market value of his services in performing this work. Also, he maintains that section 162(b) is the specific statutory authority for the claimed deduction. Respondent argues that section 162 provides no ground for allowing a deduction for the value of personal services rendered.

We agree with respondent.

Deductions are allowed under section 162(a)[19] for the taxpayer's ordinary and necessary trade or business expenses. In the instant case, petitioner deducted $12,054.36 as the uncompensated value of his services rendered in the divorce proceeding. Since the expenditure of petitioner's labor does not constitute petitioner's payment[20] of a deductible business expense (e.g., *Maniscalco v. Commissioner*, 632 F.2d 6 (6th Cir. 1980), affg. a Memorandum Opinion of this Court;[21] *Rink v. Commissioner*, 51 T.C. 746, 753 (1969)), petitioner is not allowed a deduction under section 162(a).

Petitioner's reliance on section 162(b)[22] and on our opinion in *Marquis v. Commissioner*, 49 T.C. 695 (1968), is misplaced. Firstly, the deduction he claims for the value of his services in the divorce case is not allowable under section 162(a), without regard to section 162(b); section 162(b), by its very words, is a disallowance provision (as we put it in *Marquis*, 49 T.C. at 698–701, section 162(b) is a "limitation" on section 162(a)), and so it cannot operate to revive a deduction that fails the test of section 162(a). Secondly, the deductions claimed, and upheld, in *Marquis* were for the amounts of the "cash disbursements" (49 T.C. at 697) made by the taxpayer therein; in contrast, petitioner seeks deductions herein for the value of his services.

We hold for respondent on this issue.[23]

---

[19]Sec. 162(a) provides, in relevant part, as follows:

SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

[20]The parties have stipulated, and we have found, that petitioner was a cash basis taxpayer.

[21]T.C. Memo. 1978–274.

[22]SEC. 162. TRADE OR BUSINESS EXPENSES.

(b) CHARITABLE CONTRIBUTIONS AND GIFTS EXCEPTED.—No deduction shall be allowed under subsection (a) for any contribution or gift which would be allowable as a deduction under section 170 were it not for the percentage limitations, the dollar limitations or the requirements as to the time of payment, set forth in such section.

[23]On his 1974 tax return, petitioner computed the deduction dealt with in this issue, as follows:

## III. Alimony Payments

Petitioner contends that he is entitled to deduct his payments to Lucille, made in 1972 and through January 23, 1973, as alimony because the amounts were paid pursuant to a written separation agreement. Alternatively, petitioner maintains that he made these payments pursuant to a legal obligation incurred by him under a written instrument incident to the divorce. Respondent maintains that since (1) none of the payments was made pursuant to a court order or decree of support and (2) no written separation agreement existed for the period in question, it follows that no alimony deduction is allowable.

We agree with respondent.

Section 215(a)[24] provides a deduction for amounts paid by a taxpayer to a former spouse if the former spouse is required to include these amounts in gross income under section 71. Under section 71(a),[25] the former spouse's gross income in-

---

| | | |
|---|---|---|
| 444.4 hrs × 30.00/hr | = | $13,332.00 |
| Court costs advanced: | | 704.67 |
| | | 14,036.67 |
| Paid | | 1,982.31 |
| | | 12,054.36 |

In the notice of deficiency, respondent disallowed $12,054.36. In effect, petitioner has been permitted to deduct the $1,277.64 amount by which the payment to petitioner exceeded his costs. Respondent does not explain why this $1,277.64 should be treated differently from the $12,054.36 which he disallows. Under the circumstances, we leave the parties where we find them as to this $1,277.64.

[24]SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

[The subsequent amendment of this provision by section 422(b) of the Deficit Reduction Act of 1984, Pub. L. 98–369, 98 Stat. 494, 797, does not affect the instant case.]

[25]SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

(2) WRITTEN SEPARATION AGREEMENT.—If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not

cludes periodic payments received from the taxpayer (1) under a decree of divorce or separate maintenance, (2) under a written separation agreement, or (3) under a decree for support; in order for petitioner to succeed, he must show that the payments in dispute fall into one of these three categories.

Section 71(a)(1) applies to payments "received after" a decree of divorce or of separate maintenance. Respondent's concession (see note 8 *supra*), leaves in dispute only those payments made by petitioner to Lucille up to January 23, 1973. The Circuit Court's decree awarding alimony pendente lite was not made until after that date, according to petitioner's testimony. The Circuit Court's decree of divorce, a mensa et thoro was not made until July 16, 1973. It appears, then, that none of the payments here in dispute was made after a decree of divorce or separate maintenance. Accordingly, none of the payments here in dispute qualifies for inclusion in Lucille's income under section 71(a)(1). It follows that none of the payments here in dispute is deductible by petitioner under section 215(a).

There is no evidence that any one of the payments here in dispute was made under a support decree. Accordingly, the amounts of these payments are not includable in Lucille's income under section 71(a)(3), and are not deductible by petitioner under section 215(a).

In order to qualify under section 71(a)(2), the payments in dispute must be shown to have been made by petitioner to Lucille under a written separation agreement. The parties have stipulated that "No written separation agreement was entered into between the petitioner and his wife." Evidently, the parties do not regard their stipulation as having foreclosed the question of whether three letters constitute, in the aggregate, a written separation agreement sufficient to satisfy this requirement of the statute.

---

apply if the husband and wife make a single return jointly.

(3) DECREE FOR SUPPORT.—If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.

[The subsequent amendment of this provision by section 422(a) of the Deficit Reduction Act of 1984, Pub. L. 98–369, 98 Stat. 494, 795, does not affect the instant case.]

Petitioner offered into evidence three letters (see notes 5, 6, & 7 *supra*), which, he contends, when viewed in the aggregate constitute a written separation agreement. The three letters fail to satisfy the requirements of the statute, which (1) requires that there be "a written separation agreement" and (2) applies to "periodic payments * * * received after such agreement is executed which are made under such agreement".

Firstly, the only writing executed on Lucille's behalf—the August 18, 1972, letter (note 7 *supra*)—is a complaint about the inadequacy of the rate of payment and not an agreement to the rate of payment. Thus, the record in the instant case does not include any *writing* (or set of writings) that constitutes an *agreement* between Lucille and petitioner. *Estate of Hill v. Commissioner*, 59 T.C. 846, 856-857 (1973). An oral agreement is insufficient. See *Gordon v. Commissioner*, 70 T.C. 525, 529 (1978), interpreting similar language in section 71(a)(1). In *Prince v. Commissioner*, 66 T.C. 1058 (1976), attorneys for the husband and wife reached an agreement in the course of a divorce trial and recited that agreement into that divorce case's record as their joint stipulation. We concluded that the certified transcript of that stipulation constituted a written agreement. The record in the instant case falls far short of showing such a written agreement. The most that can be said about the three letters is that they are evidence of a course of action; petitioner determined that he ought to make payments of $125 per week to Lucille, and he made these payments for 28 weeks.

Secondly, the course of weekly payments must have begun no later than June 1972. The August 18, 1972, letter refers to such payments already having been made. Payments made before the written agreement was executed are not eligible for treatment under section 71(a)(2). Even if a written agreement ultimately was executed, nothing in the record would permit us to reach a conclusion that any of petitioner's disputed payments to Lucille were made *after* any such agreement was executed. See *Gordon v. Commissioner*, 70 T.C. at 530.

We conclude, and we have found, that petitioner's disputed payments to Lucille were not paid under a written separation agreement.

Petitioner relies on a statement in *Lerner v. Commissioner*, 195 F.2d 296, 298 (2d Cir. 1952), revg. 15 T.C. 379 (1950), in which the Court of Appeals for the Second Circuit interpreted the statutory phrase "written instrument incident to such divorce". The instrument in *Lerner* was an agreement between Lerner and his wife describing in great detail the rate of the payments, the purpose of the payments, and even the mechanical procedure of the payments. The dispute resolved by the Court of Appeals was whether the written instrument was incident to the divorce, not whether there was a written instrument.

Petitioner also relies on our opinion in *Cramer v. Commissioner*, 36 T.C. 1136 (1961), citing *Lerner* with approval. In *Cramer* we found that there was a specific instrument that was negotiated, revised, and executed by Cramer and her husband. In *Cramer*, also, the question presented was whether the written instrument was incident to the divorce, not whether there was a written instrument.

Both *Cramer* and *Lerner* are distinguishable from the instant case, as to the factual setting and also as to the legal issue that those opinions analyze.

We hold for respondent on this issue.

## IV. Maintenance Expenses

Petitioner contends that he is entitled to deduct his maintenance expenses for the house under section 212 because he held the house for the production of income. He maintains that the jointly owned house was converted by his wife to rental property when she vacated the premises in January 1973 and the property remained rented to a tenant. Therefore, petitioner argues, although the tenant vacated the premises sometime after June 1974, petitioner never converted the property back to a personal residence and he assumed the maintenance of property held for the production of income.

Respondent agrees that, if we were to conclude that petitioner held the house for the production of income, then petitioner would be entitled to a deduction for the maintenance expenses. However, respondent argues, since petitioner neither received any income from the rental property nor entered into any of the business arrangements, the house had never been converted to rental property for petitioner's tax purposes. Also,

respondent contends that petitioner did not maintain the house for postconversion appreciation purposes and, therefore, petitioner is not entitled to deduct the maintenance expenses of the property.

We agree with respondent.

Under section 212(2),

there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

\*    \*    \*    \*    \*    \*    \*

(2) for the management, conservation, or maintenance of property held for the production of income; * * *

Whether an individual holds property for the production of income is a question of fact, and depends on the purpose or intention of the individual, as gleaned from all of the facts and circumstances of the particular case. Several factors are to be considered in determining this intention. Where the property is the individual's residence, these factors include (1) the length of time the house was occupied by the individual as his residence before placing it on the market for sale; (2) whether the individual permanently abandoned all further personal use of the house; (3) the character of the property (recreational or otherwise); (4) offers to rent; and (5) offers to sell. In addition, if the individual offers his house only for sale, then in order to be treated as holding the property for the production of income he must intend to realize gain representing postconversion appreciation in the fair market value of the property. *Meredith v. Commissioner*, 65 T.C. 34, 41–42 (1975), and cases cited therein.

The burden of proof is on petitioner (see, e.g., *Welch v. Helvering*, 290 U.S. 111, 115 (1933); *Meredith v. Commissioner*, 65 T.C. at 41; Rule 142(a), Tax Court Rules of Practice and Procedure) to show that he held the house for the production of income.

When petitioner vacated the premises, in April 1972, the house was left for Lucille's use, at least for the time being. (For circumstances under which petitioner might have been allowed alimony deductions on account of his expenditures for Lucille's benefit, see J.E. Maule, Taxation of Residence Transactions 437-441 (1985).) Although the evidence is sparse, it

seems clear that Lucille was to bear the effect of any expenses and was to be entitled to receive any income to be derived from the house. Petitioner did not include in income any rental income from the house for any of the years in question. There is no basis in the record to attribute to petitioner any of Lucille's activities in renting out the house.[26]

As in *Meredith* (65 T.C. at 40–41), we conclude that petitioner abandoned his personal use of the house before he paid the expenses for which he seeks a deduction. However, during the time petitioner paid these expenses, he held the house only for sale as soon as the divorce proceeding was concluded. In fact, the house was sold in 1975, shortly after the final divorce decree was enrolled. We have no evidence that petitioner held the house for appreciation purposes after he began to assume the burden of maintenance expenses. Thus, as in *Meredith*, petitioner never converted the property to a section 212(2) purpose. We conclude that petitioner did not hold the house for the production of income when the expenses were paid.

We hold for respondent on this issue.

## V. Section 6653(a)—Negligence, Etc.

An addition to tax under section 6653(a)[27] is imposed if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations. Petitioner has the burden of proving error in respondent's determinations that this addition to tax should be imposed against him. *Bixby v. Commissioner*, 58 T.C. 757, 791–792 (1972).

Although the instant case presents many issues, the only one giving rise to respondent's determination of the addition to tax under section 6653(a) is the charitable contributions issue (issue I *supra*).

---

[26]Cf. *Lebeau v. Commissioner*, T.C. Memo. 1980–201.

[27]SEC. 6653. FAILURE TO PAY TAX.

(a) NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME OR GIFT TAXES.—If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.

[The subsequent amendments of this provision (by sec. 101(f)(8) of the Crude Oil Windfall Profit Tax Act of 1980, Pub. L. 96–223, 94 Stat. 229, 253, by sec. 722(b)(1) of the Economic Recovery Tax Act of 1981, Pub. L. 97–34, 95 Stat. 172, 342, and by sec. 107(a)(3) of the Technical Corrections Act of 1982, Pub. L. 97–448, 96 Stat. 2365, 2391) do not affect the instant case.]

In claiming deductions for the fair market value of his services, petitioner intentionally disregarded section 1.170A-1(g), Income Tax Regs., because he believed the regulation to be invalid. We have concluded that his belief was incorrect. We have pointed out (note 14 *supra*) that a number of the opinions on which he relies—several of which opinions were issued before petitioner filed some or all of the tax returns for the years in issue—indicate that section 170(e), as enacted by the Tax Reform Act of 1969, would have eliminated any deduction in petitioner's case even if the regulation was invalid. We conclude that petitioner had no reasonable basis for claiming these deductions in the teeth of both the regulation and the statute.[28]

We hold for respondent on this issue.

To take account of respondent's concessions,

*Decision will be entered under Rule 155.*

---

[28]We leave to another day the applicability of sec. 6653(a) where the taxpayer has a reasonable basis for his position, in light of *Druker v. Commissioner*, 697 F.2d 46, 52–56 (2d Cir. 1982), revg. in part 77 T.C. 867, 874–876 (1981).