T.C. Summary Opinion 2013-40

UNITED STATES TAX COURT

GEORGE RUSSELL REIFF, JR., AND AMY REIFF, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21771-10S.                    Filed May 28, 2013.

George Russell Reiff, Jr., and Amy Reiff, pro sese.

<u>Adam P. Sweet</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1] Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $6,992 in petitioners' Federal income tax for 2007 and an accuracy-related penalty of $1,398 under section 6662(a). Petitioners filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioners resided in Virginia.

The issues remaining in dispute are whether: (1) petitioners are entitled to a deduction of $4,235 for "other expenses" reported on Schedule C, Profit or Loss From Business, related to Mr. Reiff's paralegal activity; (2) petitioners are entitled to a deduction of $9,107 for car and truck expenses reported on a second Schedule C related to Mr. Reiff's disk jockey (DJ) activity;[2] (3) petitioners are liable for an accuracy-related penalty under section 6662(a); and (4) Mrs. Reiff is entitled to

---

[1] All section references are to the Internal Revenue Code (Code), as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[2] With regard to Mr. Reiff's DJ activity, respondent concedes that petitioners are entitled to a deduction of $227 for professional dues and fees, and petitioners concede that they are not entitled to deductions for the following expenses: $800 for "U.S. Government Repay", $6,447 for "Lost Revenue/Cancelled events", and $2,289 for "State Tax Loss".

relief from joint and several liability under section 6015. To the extent not discussed herein, other issues are computational and flow from our decision in this case.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

Mr. Reiff is an experienced DJ. He also earned paralegal certificates in general paralegal studies and domestic violence/victim advocacy from the National Institute of Paralegal Arts and Sciences and the University of Southern Colorado. During 2007 Mr. Reiff was employed by the Whitman-Walker Clinic.

Mrs. Reiff is a graduate of Pennsylvania State University where she earned a bachelor's degree in music education and a master's degree in music and vocal performance. During 2007 Mrs. Reiff was employed as an educator and a singer.

Mr. Reiff generally handled the couple's finances. Although petitioners had a joint checking account, Mrs. Reiff maintained a checking account of her own.

I. Paralegal Activity

In 2007 Mr. Reiff investigated the feasibility of starting a "pro bono paralegal business" in which he would provide assistance to persons making Supplemental Security Income (SSI) disability claims. Mr. Reiff spent 15 hours

researching Federal laws governing organizations that are exempt from Federal income tax and about 106 hours familiarizing himself with the laws relating to SSI disability claims. He ultimately decided not to pursue this activity.

Mr. Reiff did not provide any paralegal services during 2007. He considered his paralegal activity to be in a startup phase during 2007.

## II. DJ Activity

During 2007 Mr. Reiff entered into a contract with Black Tie, an event planner that matches prospective clients with DJs for events such as weddings, corporate gatherings, and parties for teenagers. Mr. Reiff worked as a DJ at several events that Black Tie scheduled during 2007. Black Tie collected and retained 45% of the total booking fee for each of these events and issued a check to Mr. Reiff for the balance.

III.  Petitioners' 2007 Tax Return

A.  Income

Petitioners reported combined wage income of $65,294,[3] a small amount of interest income, and nonemployee compensation of $31,111.[4]

B.  Paralegal Activity

Mr. Reiff reported on Schedule C (hereinafter Schedule C-1) that he had no gross receipts from his paralegal activity and that he incurred $4,235 of "other expenses".  The $4,235 amount represents Mr. Reiff's estimate of the value of the time he spent researching the feasibility of starting a pro bono paralegal business and is the product of 121 hours of research multiplied by $35 per hour (i.e., 121 hours x $35 per hour = $4,235).[5]

---

[3]A Form 8379, Injured Spouse Allocation, attached to petitioners' return indicates that Mr. and Mrs. Reiff reported wages of $31,369 and $33,925, and tax withholdings of $3,762 and $2,369, respectively.

[4]The nonemployee compensation of $31,111 represents the sum of $28,811 that Black Tie paid to Mr. Reiff and $2,300 that Mrs. Reiff earned.

[5]Mr. Reiff explained that he used the $35 hourly rate because it is one-half of the $70 hourly rate for paralegal services recommended by the National Federation of Paralegal Associations and the National Capital Area Paralegal Association for the Washington, D.C., region.

C.  DJ Activity

Mr. Reiff reported on a second Schedule C (hereinafter Schedule C-2) that he earned gross receipts of $31,111 in respect of the DJ activity and he incurred total expenses of $43,704 (including car expenses of $9,107) producing a net loss from the activity of $12,593.

During 2007 petitioners owned a Dodge Caravan (Caravan) and a Toyota Corolla.  Mr. Reiff testified that the Caravan was used strictly for the DJ activity, and neither he nor Mrs. Reiff used it for any other purpose.  He further testified that if he drove the Caravan to the grocery store he would "make sure that [he] picked up batteries or something along that line, something which had to relate to the business."

Mr. Reiff recorded the number of miles that he drove in respect of his DJ activity on pieces of paper or on the cover of Black Tie job packets and then entered the information on spreadsheets.  Mr. Reiff maintained four such spreadsheets labeled "DJ Events", "DJ Shopping", "DJ Office-Meetings-Storage", and "DJ Business Meetings".  These spreadsheets indicate that he drove a total of 18,972 miles in connection with the DJ activity during 2007.

The spreadsheet for DJ events includes the following information for each event:  the day of the week, the date, the type of event (e.g, wedding, corporate

event, teenage party), the location, the number of miles driven, and, in many instances, the client's name. The DJ events spreadsheet lists 4,615 total miles.

The spreadsheets for shopping, office-meetings-storage, and business meetings were more circumspect, listing only the date, the name of the retail store visited or a generic reference to the activity (e.g., "maintenance" or "office meeting"), the location (by city or name of hotel), and the number of miles driven. The spreadsheets for shopping, office-meetings-storage, and business meetings do not include any detail with regard to the business purpose of individual trips.

The DJ shopping spreadsheet includes several round trips of 96 to 102 miles from Mr. Reiff's home in Alexandria, Virginia, to retail stores in Chantilly, Virginia. The round trip distance by car from Alexandria, Virginia, to Chantilly, Virginia, is approximately 56 miles. Mr. Reiff was unable to adequately explain this discrepancy in his mileage calculations.

IV. Tax Return Preparation

Mr. Reiff prepared petitioners' joint tax return for 2007. Although he conducted online research regarding certain deductions, he did not consult or otherwise seek the advice of a tax professional in preparing the return. Mrs. Reiff testified that she did not review the return in detail before signing it. She nevertheless was aware that Mr. Reiff's paralegal activity did not generate any

receipts and that both the paralegal and DJ activities operated at a net loss during 2007.

## V. Mrs. Reiff's Request for Spousal Relief

After filing the petition in this case, Mrs. Reiff requested spousal relief under section 6015. Although the Court continued this case from an earlier trial calendar to permit the parties to exchange information regarding the request for relief, the issue was not developed to any meaningful degree before trial.

During the year in issue Mrs. Reiff received total wage and nonemployee compensation of $36,225 and had income tax withholding of $2,369. Mrs. Reiff testified that petitioners deposited the $1,980 refund claimed on their return to their joint checking account. She offered no financial information and otherwise failed to show that she would suffer economic hardship if she is denied relief from joint and several liability.

Mrs. Reiff testified that she was not subject to abuse, nor was she coerced into signing the return in question. She did not offer any evidence that she was in poor mental or physical health on the date she signed the 2007 return or when she requested spousal relief. At the time of trial she was in compliance with Federal income tax laws.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[6]

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the

---

[6]As discussed in detail below, petitioners did not comply with the Code's substantiation requirements and have not maintained all required records. Therefore, the burden of proof as to any relevant factual issue does not shift to respondent under sec. 7491(a). See sec. 7491(a)(1) and (2); Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).

deduction relates has been paid or incurred. Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943). Personal, family, and living expenses are generally nondeductible expenses. Sec. 262(a).

Section 274(d) prescribes more stringent substantiation requirements before a taxpayer may deduct certain categories of expenses, including expenses related to the use of listed property as defined in section 280F(d)(4). See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). As relevant here, the term "listed property" includes passenger automobiles. Sec. 280F(d)(4)(A)(i). To satisfy the requirements of section 274(d), a taxpayer generally must maintain records and documentary evidence which, in combination, are sufficient to establish the amount, date, and business purpose of each separate expenditure or business use of listed property. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

## I. Paralegal Activity

Petitioners claimed a deduction of $4,235 for "other expenses" on Schedule C-1 relating to Mr. Reiff's paralegal activity. The deduction represents Mr. Reiff's estimate of the value of the time he spent researching the feasibility of starting a pro bono paralegal business. Petitioners contend that the "other expenses" are deductible as educational expenses under section 1.162-5, Income Tax Regs.[7] We disagree.

As previously discussed, section 162(a) permits as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Generally, a cash basis taxpayer is not entitled to deduct a trade or business expense under section 162(a) unless the taxpayer has

---

[7]Sec. 1.162-5(a), Income Tax Regs., provides the general rule that expenditures made by an individual for education, including research, are deductible as ordinary and necessary business expenses if the education (1) maintains or improves skills required by the individual in his employment or other trade or business, or (2) meets express requirements of his employer or the requirements of applicable laws or regulations. Sec. 1.162-5(b), Income Tax Regs., sets forth exceptions to the general rule outlined above and provides that nondeductible education expenses include expenditures made by an individual to meet the minimum education requirements for qualification in his employment or other trade or business or expenditures made to qualify an individual for a new trade or business. Sec. 1.162-5(b)(2) and (3), Income Tax Regs. As discussed below, petitioners did not pay education expenses during the year in issue, and, therefore, their reliance on this regulation is misplaced. Moreover, even if petitioners had paid educational expenses, any such expenditures would still appear to be nondeductible as startup expenses. See sec. 195.

paid the expense during the taxable year, see secs. 1.446-1(c)(1)(i), 1.461-1(a)(1), Income Tax Regs., and payment must be made in cash or its equivalent, see Davison v. Commissioner, 107 T.C. 35, 41 (1996), aff'd, 141 F.3d 403 (2d Cir. 1998).[8]

Petitioners did not demonstrate that they paid any expenses, such as tuition or the cost of books and supplies, in connection with Mr. Reiff's paralegal activity during the year in issue. It is well settled that the value of labor performed by a taxpayer does not constitute an amount "paid or incurred", and for that reason, a cash basis taxpayer is not entitled to deduct the value of his or her own labor as a business expense under section 162(a). See Grant v. Commissioner, 84 T.C. 809, 819-820 (1985), aff'd without published opinion, 800 F.2d 260 (4th Cir. 1986); see also Remy v. Commissioner, T.C. Memo. 1997-72. To hold otherwise would be to allow a business deduction for unpaid compensation which was never reported as income. See, e.g., Hutcheson v. Commissioner, 17 T.C. 14, 19 (1951). Consistent with the foregoing, we sustain respondent's determination disallowing the deduction petitioners reported on Schedule C-1 for "other expenses".

---

[8]The record reflects that petitioners computed their taxable income under the cash receipts and disbursements method of accounting. Sec. 446(c)(1).

II. DJ Activity

Petitioners claimed a deduction of $9,107 for car and truck expenses on Schedule C-2 relating to Mr. Reiff's DJ activity. Mr. Reiff produced four spreadsheets purporting to show the miles that he drove in connection with the DJ activity. Respondent contends that Mr. Reiff's various spreadsheets do not satisfy the heightened substantiation requirements of section 274(d).

The DJ events spreadsheet provides detailed information including the day of the week, the date, the type of event, the location of the event, number of miles driven, and in many instances the client's name. We find that the DJ events spreadsheet contains sufficient detail to satisfy the heightened substantiation requirements of section 274(d), and Mr. Reiff has substantiated that he drove 4,615 miles to provide DJ services at various events during the year in issue. Accordingly, petitioners are entitled to a deduction of $2,238 for transportation expenses during 2007.[9]

The spreadsheets for shopping, office-meetings-storage, and business meetings were not nearly as detailed as the spreadsheet for DJ events, and they

---

[9]The product of 4,615 miles driven multiplied by 48.5 cents per mile (2007 standard mileage rate) equals $2,238. See Rev. Proc. 2006-49, sec. 5.01, 2006-2 C.B. 936, 938.

uniformly lacked a description of the particular business purpose for individual trips. That lack of detail, combined with errors in some of the mileage calculations and Mr. Reiff's testimony suggesting that he converted some personal trips to the grocery store into business trips merely by purchasing batteries or other incidental items, leads us to conclude that the spreadsheets are not a reliable indication of the miles that Mr. Reiff drove for the purposes indicated therein. In sum, the remaining spreadsheets do not satisfy the strict substantiation requirements of section 274(d). See Fleming v. Commissioner, T.C. Memo. 2010-60.

## III. Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes a penalty equal to 20% of the amount of any underpayment attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). Negligence also includes any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.; see Olive v. Commissioner, 139 T.C. 19, 43 (2012).

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

With respect to a taxpayer's liability for any penalty, section 7491(c) requires the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Id. at 447; see Rule 142(a).

Respondent has discharged his burden of production under section 7491(c) by showing that petitioners failed to keep adequate books and records, and they failed to properly substantiate most of their claimed expenses. See sec. 1.6662-3(b)(1), Income Tax Regs.

Mr. Reiff prepared petitioners' tax return and conducted online research regarding certain deductions. Petitioners did not consult or otherwise seek the advice of a tax professional in preparing their return.

On the record presented, petitioners failed to establish that there was reasonable cause for and that they acted in good faith with respect to the underpayment of tax, or any portion of it, for the year in issue. Accordingly, respondent's imposition of an accuracy-related penalty is sustained.

IV. Spousal Relief

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). If certain requirements are met, however, an individual may be relieved of joint and several liability under section 6015.

The Court applies a de novo scope and standard of review in deciding whether a taxpayer is entitled to relief under section 6015. See Wilson v. Commissioner, 705 F.3d 980, 993-994 (9th Cir. 2013), aff'g T.C. Memo. 2010-134; Porter v. Commissioner, 132 T.C. 203, 210 (2009). The spouse requesting relief bears the burden of proof. See Rule 142(a); Porter v. Commissioner, 132

T.C. at 210; <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), <u>aff'd</u>, 101 Fed. Appx. 34 (6th Cir. 2004).

There are three types of relief available under section 6015. In general, section 6015(b) provides full or apportioned relief from joint and several liability for an understatement of tax on a return, section 6015(c) provides apportioned relief in respect of an understatement of tax to taxpayers who are divorced or separated,[10] and in certain circumstances section 6015(f) provides equitable relief from joint and several liability in respect of any unpaid tax or any deficiency if relief is not available under subsection (b) or (c).

A.  <u>Section 6015(b)</u>

To be eligible for relief under section 6015(b), the requesting spouse must establish, inter alia, that the understatement of tax is attributable to erroneous items of the nonrequesting spouse and, in signing the return, the requesting spouse "did not know, and had no reason to know" of the understatement of tax. Sec. 6015(b)(1)(B) and (C).

---

[10]Petitioners were not divorced or legally separated at the time Mrs. Reiff elected to claim spousal relief, and they were continuously residing in the same household during all relevant periods. Therefore, Mrs. Reiff is not eligible for relief under sec. 6015(c). <u>See</u> sec. 6015(c)(3)(A)(i).

We conclude that Mrs. Reiff had reason to know of the understatement of tax within the meaning of section 6015(b)(1)(C). A spouse seeking relief under section 6015(b) has reason to know of the understatement "if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the * * * understatement." Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989). A taxpayer has reason to know of an understatement if she has a duty to inquire and fails to satisfy that duty. Id. A joint tax return reporting a large deduction that significantly reduces a couple's tax liability generally puts both spouses on notice that the return may contain an understatement. See Levin v. Commissioner, T.C. Memo. 1987-67.

Although Mrs. Reiff testified that she did not review the return in any detail when it was presented to her for signature, she nevertheless is charged with constructive knowledge of its contents. See Price v. Commissioner, 887 F.2d at 965-966; see also Von Kalinowski v. Commissioner, T.C. Memo. 2001-21. A spouse cannot obtain relief under section 6015 in a case involving disallowed deductions "'by simply turning a blind eye to--by preferring not to know of--facts fully disclosed on a return, of such a large nature as would reasonably put such spouse on notice that further inquiry would need to be made'". Price v.

Commissioner, 887 F.2d at 965-966 (quoting Levin v. Commissioner, T.C. Memo. 1987-67).

Petitioners claimed large deductions related to Mr. Reiff's activities which served to offset their wage income and resulted in a claim for refund. Considering all the facts and circumstances, we conclude that Mrs. Reiff was obliged to inquire further, and she failed to do so. See, e.g., Wiener v. Commissioner, T.C. Memo. 2008-230. As a result, we hold that Mrs. Reiff does not meet the requirements of section 6015(b)(1)(C), and she does not qualify for relief from joint and several liability under section 6015(b).

B. Section 6015(f)

Section 6015(f) grants the Commissioner discretion to relieve an individual from joint liability, where relief is not available under section 6015(b) or (c), if, taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency. As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying Rev. Proc. 2000-15, 2000-1 C.B. 447, that are used in determining whether it is inequitable to hold a requesting spouse liable for all or part of the liability for any unpaid tax or deficiency. The Court consults these guidelines

when reviewing the IRS' denial of relief.  See <u>Washington v. Commissioner</u>, 120 T.C. 137, 147-152 (2003).

### 1.  Section 4.01:  Threshold Conditions

Under the Commissioner's published guidance, the requesting spouse must first satisfy certain threshold conditions in Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297-298.  Respondent does not dispute that Mrs. Reiff satisfies the threshold conditions.

### 2.  Section 4.03:  Facts and Circumstances Test

Where, as here, a requesting spouse meets the threshold conditions but fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298,[11] the Commissioner may nevertheless consider the criteria set forth in Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-299, and grant spousal relief under section 6015(f).  Rev. Proc. 2003-61, sec. 4.03, provides the following nonexclusive list of factors the Commissioner will consider in determining whether relief is warranted:  (1) whether the requesting spouse is separated or divorced from the nonrequesting spouse; (2) whether the requesting spouse would suffer economic

---

[11]Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. 296, 298, sets forth requirements for so-called safe harbor relief under sec. 6015(f) with respect to underpayments of amounts reported on joint returns.  This case does not involve such an underpayment.

hardship if relief is not granted; (3) whether on the date the requesting spouse signed the joint return, the requesting spouse did not know, and had no reason to know, of the item giving rise to the deficiency; (4) whether the nonrequesting spouse has a legal obligation to pay the tax liability pursuant to a decree of divorce or other agreement; (5) whether the requesting spouse received a significant benefit from the item giving rise to the deficiency; and (6) whether the requesting spouse has made a good-faith effort to comply with the Federal income tax laws for the taxable years following the taxable year(s) to which the request for relief relates. Two additional factors that the Commissioner may consider in favor of granting relief are: (1) whether the nonrequesting spouse abused the requesting spouse, and (2) whether the requesting spouse was in poor mental or physical health at the time he or she signed the return or requested relief. See id. sec. 4.03(2)(b)(i) and (ii), 2003-2 C.B. at 299.[12]

The Commissioner's guidelines are relevant to our inquiry, but the Court is not rigidly bound by them inasmuch as our analysis and determination ultimately

---

[12]On January 5, 2012, the Commissioner issued Notice 2012-8, 2012-4 I.R.B. 309, announcing that a proposed revenue procedure updating Rev. Proc. 2003-61, supra, will be forthcoming. That proposed revenue procedure, if finalized, will revise the factors that the Commissioner will use to evaluate requests for equitable relief under sec. 6015(f). We have evaluated the record in this case against the factors set forth in Rev. Proc. 2003-61, supra, in view of the fact that the revenue procedure proposed in Notice 2012-8, supra, is not final.

turn on an evaluation of all the facts and circumstances. See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Porter v. Commissioner, 132 T.C. at 210.

### a. Marital Status

As previously mentioned, Mr. and Mrs. Reiff remain married and were never separated. Accordingly, the marital status factor is neutral.

### b. Economic Hardship

To ascertain whether a requesting spouse will suffer economic hardship if spousal relief under section 6015(f) is denied, Rev. Proc. 2003-61, sec. 4.02, directs the Commissioner to base his decision on rules similar to those found in section 301.6343-1(b)(4), Proced. & Admin. Regs. (providing for the release of a levy if satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses).

Mrs. Reiff offered no financial information and otherwise failed to show that she would suffer economic hardship if she is denied relief from joint and several liability. This factor weighs against relief.

### c. Knowledge

The third factor in the context of this case is whether the requesting spouse did not know and had no reason to know of the items giving rise to the deficiency.

As previously discussed in connection with our analysis of section 6015(b), Mrs. Reiff was sufficiently aware of the facts surrounding Mr. Reiff's paralegal and DJ activities that she should have inquired further as to whether there was an understatement of tax on the return. This factor weighs against relief.

### d. Nonrequesting Spouse's Legal Obligation

Mr. Reiff did not have a legal obligation to pay the outstanding tax liability for 2007 pursuant to a divorce decree or an agreement. This factor is neutral.

### e. Significant Benefit

The record reflects that petitioners deposited to their joint checking account the $1,980 refund claimed on their return. Moreover, the record shows that Mrs. Reiff's income tax withholding of $2,369 was insufficient to satisfy the income tax due on her combined wage and nonemployee compensation of $36,225. On balance, Mrs. Reiff benefited beyond normal support from the items giving rise to the deficiency, and we conclude this factor weighs against relief.

### f. Compliance With Income Tax Laws

Mrs. Reiff has been in compliance with Federal income tax laws. This factor weighs in favor of relief.

### g. Abuse

Mrs. Reiff testified that she was not subject to abuse. This factor is neutral.

### h. Mental/Physical Health

Mrs. Reiff did not offer any evidence that she was in poor mental or physical health on the date she signed the 2007 return or when she requested relief. This factor is neutral.

### 3. Conclusion

Considering all the facts and circumstances, we are not persuaded that it would be inequitable to deny Mrs. Reiff spousal relief under section 6015(f). Although Mrs. Reiff should have known of the understatement of tax, she failed to inquire into the matter. In addition, she benefited from the underreported liability, and there is no evidence that she will suffer economic hardship if she is denied relief. As a result, we hold that Mrs. Reiff is not entitled to relief under section 6015 for 2007.

To reflect the foregoing,

Decision will be entered

under Rule 155.