WELFORD E. GARNER, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Garner v. Commissioner
Docket No. 2741-71.
United States Tax Court
T.C. Memo 1973-79; 1973 Tax Ct. Memo LEXIS 209; 32 T.C.M. (CCH) 353; T.C.M. (RIA) 73079; April 9, 1973, Filed Walter R. Tabler, for the petitioner. Richard A. Jones, Jr., for the respondent. DAWSON
*210 MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $2,039.39 in petitioner's Federal income tax for the year 1968. 2 Petitioner has conceded a travel expense adjustment made by respondent. At issue is whether certain payments made by the petitioner to his wife in 1968 are deductible as alimony under section 215(a), [1] Internal Revenue Code of 1954. The answer depends upon whether the payments in question were made pursuant to a "written separation agreement." FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. Welford E. Garner, Jr. (herein called petitioner) was a resident of Columbia, Maryland, when he filed his petition in this proceeding. He filed his Federal income tax return for the year 1968 with the district director of internal revenue at Baltimore, Maryland. Petitioner and Virginia F. Garner were married in 1946. They have two children, Welford E. Garner, III and Susan Virginia Garner. Petitioner and Virginia have been permanently separated since 1966. Prior *211 to that time there were several separations for short intervals but reconciliations followed each of them. No decree of divorce or separate maintenance was issued to the petitioner or Virginia under which alimony or support and maintenance payments were imposed on or incurred by the petitioner in the taxable year 1968. 3 No decree of support was issued by a court of competent jurisdiction requiring the petitioner to make alimony or support and maintenance payments to Virginia during the taxable year 1968. On December 21, 1967, Solomon M. Schapiro, an attorney who represented Virginia Garner, wrote a letter to Walter R. Tabler, who represented the petitioner, which reads as follows: RE: Garner v. Garner Dear Mr. Tabler: I wish hereby to confirm the following agreement, in addition to others, that were reached by the above named parties this morning in the conference at your office: 1. The net proceeds of the sale of 545 Wyanoke Avenue to be disbursed as follows: (a) $8,000.00 to be placed in a joint account, subject to withdrawal only by the joint signatures of the parties, being a fund set aside for education of the children of the parties, to be divided equally *212 between the parties to the extent that the same is not expended for such education. (b) The balance of the net proceeds of said sale, over and above the aforesaid sum of $8,000.00, to be divided equally between the parties. 2. Mr. Garner will sign the mortgage with Provident Savings Bank in the amount of $11,600.00 for the property 1836 Glen Ridge Road, Baltimore County, Maryland, being purchased by Mrs. Garner for her residence, title to said property to be in Mrs. Garner's name alone. Mrs. Garner, of course, will make the mortgage payments. (Signed) Solomon M. Schapiro SMS/fr cc: Mrs. Virginia F. Garner P.S. I will call your early mext week so that we can bring the agreement to be signed by the parties to a final conclusion. 4 No written separation agreement was ever executed and signed by the petitioner and Virginia providing for alimony or support and maintenance payments for the taxable year 1968. On October 15, 1968, Virginia filed a Cross-Bill of Complaint in the Circuit Court for Baltimore County, Maryland, in which she sought alimony for herself and support for her daughter, Susan. In connection with subsequent divorce proceedings, Virginia signed *213 written interrogatory answers on March 24, 1969. On August 7, 1969, the petitioner obtained a Decree of Divorce "A Vinculo Matrimonii" from Virginia in the Circuit Court of Baltimore County, Maryland, in mhich he was ordered to pay Virginia $85 per week as permanent alimony.
On his 1968 Federal income tax return the petitioner claimed a deduction of $4,800 for alimony payments made to Virginia. This claimed deduction was disallowed by respondent. OPINION Section 215(a) of the Code provides that alimony or support and maintenance payments which are includable in the gross income of the wife under section 71 shall be allowed as a deduction to the husband within his taxable year. Generally, section 71(a) provides for the inclusion of alimony or support and maintenance payments in the wife's gross income in three situations: First, if a wife is divorced or 5 legally separated from her husband under a decree of divorce or of separate maintenance and payments are made under the decree or under a written instrument incident to the divorce or separation; second, if a wife is separated from her husband and payments are made under a written separation agreement; and, third, if *214 a wife is separated from her husband and payments are made under a decree requiring the husband to make payments for the wife's support or maintenance. The petitioner was not granted a divorce decree until August 7, 1969. There is no evidence showing a separate maintenance decree which required, or under which the petitioner made, payments during 1968, and it has been stipulated that there was no support decree requiring the petitioner to make alimony or support and maintenance payments during 1968. Thus, if the petitioner is entitled to deduct any payments he made to Virginia in 1968, the payments must be includable in her gross income under section 71(a) (2) of the Code, which provides: WRITTEN SEPARATION AGREEMENT - If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because *215 of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly. 6 Petitioner has not produced a written separation agreement which provides for the alimony payments he seeks to deduct. Respondent contends that the language of section 71(a) (2) is clear - its plain meaning being to require payments to be made pursuant to a written separation agreement executed after August 16, 1954, for the payments to be includable in the wife's gross income. The regulations are also clear in requiring a written agreement. Section 1.71-1(b) (2) (i), Income Tax Regs., provides in part: "The periodic payments must be made under the terms of the written separation agreement after its execution and because of the marital or family relationship." Section 22(k) of the Revenue Act of 1942 (the predecessor of sections 71 and 215 of the Internal Revenue Code of 1954) was enacted to treat as income support payments received by one spouse, and to provide a deduction to the payor spouse, thus relieving him of the burden of being taxed on the payments. H.R. Rept. No. 2333, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 427; S. Rept. No. 1631, 77th Cong. *216 , 2d Sess. (1942), 1942-2 C.B. 568. Section 71(a) (2) was added to section 71 in 1954 because of the discrimination the then present section created against husbands and wives who had separated but not under a court decree. H.R. Rept. No. 1337, 83d Cong., 2d Sess. 9 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess.10 (1954). 7 Absent statutory provisions to the contrary, the prevailing rule as to the taxation of alimony payments had been refuse to regard the payments as income to the receiving spouse and to deny the paying spouse a deduction. Gould v. Gould, 245 U.S. 151 (1917). From the enactment of section 22(k) of the Revenue Act of 1942, Congress has restricted the situations where alimony payments are includable in the recipient's taxable income and deductible to the payor. Only where certain formal steps were taken did Congress allow this tax treatment. Originally section 22(k) required that there be a decree of divorce or of separate maintenance or a written instrument incident to such divorce or separation. In 1954, when sections 71(a) (2) and 71(a) (3) were added, Congress restricted the liberalization in this area to situations where there *217 was a written agreement or court decree requiring support or maintenance payments to be made. A written instrument, therefore, has always been required under this statute. Congress was interested in requiring a clear statement of the separation agreement so it could be determined with certainty the amount of payments to be included in the wife's income and the allowable corresponding deduction available to the husband. Section 1.71-1(b) (4), Income Tax Regs., provides that section 71(a) applies only to the payments made because of the family or marital relationship in recognition of the general 8 obligation to support that is made specific by a decree, instrument or agreement.The requirement that the decree, instrument or agreement be in writing adds needed certainty to the specificity that is required. Petitioner contends that the documentary evidence he presented at the trial constitutes a "written separation agreement" under section 71(a) (2) of the Code. This evidence consists of a crossbill of complaint, dated October 15, 1968, and filed in petitioner's divorce action by his wife, in which Virginia stated she had been receiving payments of support from the petitioner; *218 a written interrogatory, dated March 24, 1969, and signed by the petitioner's wife, in which she admitted receipt of support payments and made reference to an agreement; a letter from the wife's attorney to the petitioner's attorney which included the phrase "in addition to others [agreements]"; check stubs; and applications for savings share account with Orangeville Permanent Building Association signed by the petitioner and his wife. The applications for the savings share account, which was to be an educational fund for the petitioner's two children set up by the disposition of real property, does not refer to or does not substantiate any agreement that might have existed for payment of support. The applications do mention a written agreement embodying terms for the withdrawal of the educational fund, but this instrument, 9 not produced by the petitioner, would not be an agreement for payment of support.
At most, the various documents offered in evidence by the petitioner are references to an oral agreement and proof of payment of support by the petitioner. Cf. Vernon L. Sheeley, 59 T.C. No. 51 (January 8, 1973), where, in connection with a somewhat similar *219 issue, this Court said: Congress enacted special rules for deciding which divorced parent would be entitled to dependency exemptions. The major objective of these rules is to provide certainty. See. H. Rept. No. 102, 90th Cong., 1st Sess. (1967), 1967-2 C.B. 590. We would subvert the spirit and intent of the statute if we held that an "oral" agreement between the parents was the equivalent of a "written" agreement. 2 In this instance the plain language of the statute controls. There was no written agreement and, consequently, the requirements of section 152(e) (2) (A) are not met. [Footnote omitted.] Since the statute requires payments includable in the wife's income to be made after and under a written separation agreement, the time a written separation agreement is executed becomes critical. Petitioner asserts that a written agreement was constituted or formed on December 21, 1967, the date of a letter from his wife's attorney to his attorney. This position is untenable. The letter does not contain the terms of an agreement for payment of alimony or support and maintenance and it does not specifically mention such an agreement. The petitioner has asserted *220 that a number of agreements were 10 referred to by the phrase "in addition to others" in the letter. It could very well be that this phrase refers to agreements, ,one of which provided for payment of support. The first written reference to any payments being made by petitioner is the crossbill of complaint which was filed by Virginia on October 15, 1968. Such reference is only an admission that she was receiving payments from petitioner, not a written separation agreement. The interrogatory signed by Virginia was dated March 24, 1969, not within or before the taxable year in question, and is only an admission of receipt of support payments and reference to an oral agreement. It is settled law that there must be a specific written separation agreement to comply with section 71(a) (2). See Howard T. Bogard, 59 T.C. 97, 101 (1972); Harry L. Clark, 40 T.C. 57, 59 (1963). Accordingly, we hold that the petitioner has failed to establish that he is entitled to the claimed deduction for any alimony payments in 1968. Decision will be entered for the respondent. Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩