T.C. Memo. 2015-13

UNITED STATES TAX COURT

FRANKLIN REX MILBOURN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14029-13.                    Filed January 21, 2015.

Mary M. Gillum, for petitioner.

Beth A. Nunnink, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge:  Respondent determined a $9,710 deficiency in petitioner's

2006 Federal income tax, a $2,427.50 addition to tax under section 6651(a)(1),[1]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] and a $1,942 accuracy-related penalty under section 6662.  After a concession by respondent,[2] the issues remaining for decision are:  (1) whether petitioner is entitled to a $36,000 alimony deduction for payments made to Brenda Ann Marshall during his 2006 taxable year; and (2) whether petitioner is liable for an addition to tax under section 6651(a)(1) for his 2006 taxable year.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioner resided in Tennessee at the time he filed his petition.

Petitioner married Ms. Marshall on February 3, 1973.  On June 9, 2005, Ms. Marshall filed a complaint for absolute divorce in the Family and Probate Court of Cumberland County, Tennessee (family and probate court).  On the same date, the family and probate court issued a notice of injunction to both petitioner and Ms. Marshall enjoining the parties from, among other things, transferring, assigning, borrowing against, concealing, or dissipating marital property without the consent of the other party.  The notice of injunction also required each party to maintain

---

[2]On brief respondent concedes that petitioner is not liable for the sec. 6662 accuracy-related penalty for 2006.

[*3] records of all expenditures and to make the records available to the other party upon request.

Sometime in 2005 Ms. Marshall's attorney prepared an initial draft of a marital dissolution agreement (draft MDA) which purportedly outlined responsibilities for petitioner and Ms. Marshall. Among the responsibilities discussed in the draft MDA was the payment of alimony from petitioner to Ms. Marshall. The draft MDA provided that petitioner would pay Ms. Marshall $6,000 per month in alimony; however, petitioner "wanted it reduced to around $2500 a month". Because petitioner and Ms. Marshall disagreed on the amount of the monthly alimony payment, neither party signed the draft MDA.[3]

On June 27, 2006, the family and probate court issued a decree of divorce, awarding Ms. Marshall an absolute divorce and reserving all other issues for future determination.

During 2006 petitioner and Ms. Marshall lived separately. In 2005 petitioner went to work as a subcontractor and estimator in New Orleans, Louisiana, and continued to work there in 2006. During 2006 petitioner made payments to Ms. Marshall totaling $37,000. Petitioner prepared a typewritten ledger listing payments he claimed to have made during 2006 to Ms. Marshall

---

[3]The draft MDA was not available to be introduced as evidence.

[*4] from his bank accounts. These payments to Ms. Marshall were in the form of either checks or transfers from petitioner's Regions personal account (Regions), Regions MCI Cumberland account (Regions MCI), or Whitney Bank account (Whitney Bank) as follows:

| Date | Method | Bank | Amount |
|------|--------|------|--------|
| 01/09/2006[1] | Check Counter | Regions | $2,000 |
| 01/13/2006 | Check 102 | Regions | 2,000 |
| 01/20/2006 | Check 103 | Regions | 2,000 |
| 02/16/2006 | Check 111 | Regions | 2,000 |
| 03/22/2006 | Check 117 | Regions | 2,000 |
| 03/30/2006 | Transfer 3763464 | Regions | 2,000 |
| 05/03/2006 | Check 134 | Regions | 4,000 |
| 06/12/2006 | Transfer 0247164 | Regions | 4,000 |
| 09/15/2006 | Transfer 7461422 | Regions | 4,000 |
| 10/20/2006 | Check 104 | Whitney Bank | 4,000 |
| 11/21/2006 | Check 177 | Regions | 2,000 |
| 11/27/2006 | Transfer 3668320 | Regions | 2,000 |
| 12/18/2006 | Transfer 5338670 | Regions MCI | 5,000 |
| Total | | | 37,000 |

[1]On brief respondent contends that this payment has not been substantiated.

On June 5, 2007, the family and probate court issued an amended final decree of divorce which incorporated a written MDA (final MDA) into the decree of divorce and ordered petitioner and Ms. Marshall to comply with the provisions

[*5] of the final MDA.[4]  Pertaining to alimony, paragraph 20 of the final MDA

provides:

> 20.  ALIMONY.  It is further agreed between the parties that
> * * * [petitioner] shall pay to * * * [Ms. Marshall], beginning on the
> date of execution of this agreement, the sum of Four Thousand Five
> Hundred ($4,500.00) Dollars per month as alimony.
>
> Said monthly payment shall continue with adjustment to
> decrease the alimony in an amount equivalent to the earned income of
> * * * [Ms. Marshall].  Adjustment of the alimony will be determined
> from the gross income of * * * [Ms. Marshall] on an annual basis or
> in advance if deemed appropriate by one or both of the parties.
>
> Alimony will not exceed Four Thousand Five Hundred
> ($4,500.00) Dollars per month.  If * * * [Ms. Marshall] should
> remarry, said payments shall be adjusted accordingly by decreasing
> the alimony in an amount equivalent to the earned income of * * *
> [Ms. Marshall].  The alimony may be adjusted on an animal [sic]
> basis or in advance if deemed appropriate by one or both parties.
>
> * * * [Ms. Marshall] shall provide to * * * [petitioner], upon
> written or electronic request a verification of income for the
> adjustment of alimony payments.
>
> Alimony payments will terminate on the death of * * *
> [petitioner].
>
> Alimony payments will not terminate on the remarriage of * * *
> [Ms. Marshall].  Said payments will terminate on the death of * * *
> [Ms. Marshall].

---

[4]According to petitioner there were "no substantial changes" between the
draft MDA and the final MDA, other than the amount of alimony payable to Ms.
Marshall.

[*6] Paragraph 23 provides that Ms. Marshall "will pay all taxes on personal and business earnings and claim any payments from * * * [petitioner] as earnings in accordance with local, state and federal tax law." Both petitioner and Ms. Marshall signed and dated the final MDA on May 23, 2007.

Petitioner did not file his 2006 Federal income tax return until September 19, 2011. On line 31 of the return, petitioner claimed an alimony deduction of $36,000[5] and listed Ms. Marshall's taxpayer identification number as the recipient's Social Security number.

On March 28, 2013, respondent issued to petitioner a notice of deficiency disallowing the $36,000 alimony deduction for 2006.[6] Petitioner timely filed a petition disputing respondent's determinations in the notice of deficiency.

## OPINION

As a general rule, the Commissioner's determinations in the notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111,

---

[5]At trial and on brief, petitioner argues that he paid $37,000 in alimony to Ms. Marshall during 2006. However, petitioner claimed a $36,000 alimony deduction on his 2006 tax return. Petitioner has not provided any explanation for this $1,000 discrepancy.

[6]In the notice of deficiency, respondent also disallowed itemized deductions of $720. Petitioner does not dispute that adjustment.

**[*7]** 115 (1933). Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to the claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

The issue for decision is what amount, if any, petitioner is entitled to as an alimony deduction on his 2006 Federal income tax return. Petitioner argues that he made payments totaling $37,000 to Ms. Marshall in 2006. Petitioner further argues that the payments are alimony pursuant to the terms of the draft MDA created by Ms. Marshall's attorney in 2005 and, thus, properly deductible from his 2006 gross income. Respondent argues that petitioner made payments totaling $35,000 to Ms. Marshall in 2006. However, respondent argues that the payments do not meet the Code's definition of alimony because there was no divorce or separation agreement in place between petitioner and Ms. Marshall during petitioner's 2006 taxable year that specified alimony to be paid.

Section 215(a) allows an individual taxpayer a deduction for alimony or separate maintenance payments paid during the taxable year. For purposes of section 215, "'alimony or separate maintenance payment' means any alimony or separate maintenance payment (as defined in section 71(b)) which is includable in the gross income of the recipient under section 71." Sec. 215(b).

**[*8]**   Section 71(b)(1) sets forth a four-pronged inquiry for determining whether a payment constitutes alimony or separate maintenance.  Section 71(b)(1) provides:

> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
> > (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
> >
> > (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
> >
> > (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
> >
> > (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

"The foregoing requirements are conjunctive; a payment is deductible alimony only if all four requirements of section 71(b)(1) are satisfied." Sa'd v. Commissioner, T.C. Memo. 2012-348, at *9.

The principal dispute between the parties concerns section 71(b)(1)(A). Respondent argues that none of the payments made by petitioner to Ms. Marshall throughout 2006 constitute alimony because there was no divorce or separation

[*9] instrument in existence during petitioner's 2006 taxable year that required alimony payments. Accordingly, we must determine whether all or some of the payments made by petitioner during 2006 were received by or on behalf of Ms. Marshall under a divorce or separation instrument. See sec. 71(b)(1)(A).

Section 71(b)(2) defines the term "divorce or separation instrument" as:

(A) a decree of divorce or separate maintenance or a written instrument incident to such a decree,

(B) a written separation agreement, or

(C) a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.

During the first half of petitioner's 2006 taxable year, no decree of divorce was in place. On June 27, 2006, the family and probate court issued a decree of divorce, awarding Ms. Marshall an absolute divorce and reserving all other issues for future determination. The decree of divorce did not include any instructions, provisions, or guidance with respect to the payment of alimony. On June 5, 2007, the family and probate court issued an amended final decree of divorce, incorporating the final MDA signed by both petitioner and Ms. Marshall on May 23, 2007. The terms of the final MDA, as incorporated into the amended final decree of divorce, require petitioner to pay alimony to Ms. Marshall. However,

**[\*10]** the amended final decree of divorce--and the requirement that petitioner pay alimony to Ms. Marshall--was not in place until 2007. Consequently, petitioner's payments to Ms. Marshall during 2006 were not made under a decree of divorce. Furthermore, petitioner concedes that no separate maintenance agreement existed between him and Ms. Marshall during 2006. Therefore, we must determine whether all or some of petitioner's payments to Ms. Marshall were made pursuant to a written separation agreement.

The term "written separation agreement" is not defined in the Code, the applicable regulations, or in the legislative history. Leventhal v. Commissioner, T.C. Memo. 2000-92, 2000 Tax Ct. Memo LEXIS 106, at \*19 (citing Jacklin v. Commissioner, 79 T.C. 340, 346 (1982)); Greenfield v. Commissioner, T.C. Memo. 1978-386, 1978 Tax Ct. Memo LEXIS 132, at \*4-\*5. A written separation agreement has been interpreted to require a clear statement in written form memorializing the terms of support between the parties. Jacklin v. Commissioner, 79 T.C. at 348; Bogard v. Commissioner, 59 T.C. 97, 101 (1972). While an oral agreement does not qualify as a written separation agreement, an oral agreement in court which is recorded in a written, official transcript does qualify. Prince v. Commissioner, 66 T.C. 1058, 1066-1067 (1976). A separation agreement requires mutual assent of the parties. Kronish v. Commissioner, 90 T.C. 684, 693 (1988).

[*11] Letters which do not show a meeting of the minds between the parties cannot collectively constitute a written separation agreement. See Grant v. Commissioner, 84 T.C. 809, 822-823 (1985), aff'd without published opinion, 800 F.2d 260 (4th Cir. 1986); Estate of Hill v. Commissioner, 59 T.C. 846, 857 (1973). However, where one spouse assents in writing to a letter proposal of support by the other spouse, a valid written separation agreement has been held to exist. Leventhal v. Commissioner, 2000 Tax Ct. Memo LEXIS 106, at *20.

Petitioner contends that he is entitled to an alimony deduction of $37,000 for payments he made to Ms. Marshall during 2006 because the payments "were made pursuant to * * * [the draft] MDA, verbally attested to, and later clarified through a written 2006 Divorce Decree and oral stipulation and a 2007 Amended Divorce Decree and * * * [final] MDA." To the contrary, respondent contends that none of the payments petitioner made to Ms. Marshall during 2006 were deductible alimony pursuant to a written separation agreement.

We agree with respondent for the following reasons. First, the most that can be said about the draft MDA is that it contemplated a prospective course of action concerning alimony which was never agreed to by the parties. Although the draft MDA was not introduced at trial, petitioner testified credibly that the draft MDA was prepared by Ms. Marshall's attorney in 2005 and that it included provisions

**[*12]** concerning the payment of alimony by petitioner to Ms. Marshall. However, the draft MDA was never signed by the parties because they failed to reach an agreement on a crucial term: the monthly amount of alimony to be paid by petitioner to Ms. Marshall. The draft MDA was simply the beginning of a negotiating process between petitioner and Ms. Marshall. What triggered the breakdown in their negotiations was that Ms. Marshall was seeking more while petitioner wanted to pay less. As petitioner stated: "We couldn't agree on the amounts. * * * I wanted to pay less. She wanted me to pay more." At best, the draft MDA was nothing more than a unilateral offer by Ms. Marshall to enter into a separation agreement, and there was no mutual assent by the parties. See Kronish v. Commissioner, 90 T.C. at 693; Estate of Hill v. Commissioner, 59 T.C. at 856-857.

Second, there was no meeting of the minds between petitioner and Ms. Marshall with respect to alimony until the parties signed the final MDA on May 23, 2007. As previously discussed, the draft MDA was not signed by the parties because they were unable to agree on a monthly alimony amount. On June 27, 2006, the family and probate court entered an initial decree of divorce; however, the decree of divorce expressly reserved determination of all other issues (i.e., alimony) for a future date. The May 23, 2007, final MDA is the first document

**[\*13]** that establishes the payment of alimony and is signed by the parties.

Paragraph 20 of the final MDA, as incorporated into the final amended decree of divorce, provides that petitioner "shall pay to * * * [Ms. Marshall], <u>beginning on the date of execution of this agreement</u>, the sum of Four Thousand Five Hundred ($4,500.00) Dollars per month as alimony." (Emphasis added.)  The execution date of the final MDA is the date that petitioner and Ms. Marshall signed the agreement, May 23, 2007.  <u>See</u> Black's Law Dictionary 649 (9th ed. 2009) (defining "execute" as "mak[ing] (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form").  Accordingly, we find that there was no written separation agreement in place between petitioner and Ms. Marshall until the execution of the final MDA on May 23, 2007.  As we stated in <u>Garner v. Commissioner</u>, T.C. Memo. 1973-79, 1973 Tax Ct. Memo LEXIS 209, at \*9:

> A written instrument, therefore, has always been required under this statute.  Congress was interested in requiring a clear statement of the separation agreement so it could be determined with certainty the amount of payments to be included in the wife's income and the allowable corresponding deduction available to the husband.  * * *

Therefore, we hold that petitioner is not entitled to his claimed alimony deduction under section 215 for 2006.

**[*14]** Section 6651(a)(1) Addition to Tax

Respondent determined that petitioner is liable for an addition to tax under section 6651(a)(1) for failure to timely file a return. The Commissioner has the burden of production with respect to any penalty, addition to tax, or additional amount. Sec. 7491(c). The Commissioner satisfies this burden of production by coming forward with sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner satisfies this burden of production, the taxpayer must persuade the Court that the Commissioner's determination is in error by supplying sufficient evidence of an applicable exception. Id.

Section 6651(a)(1) imposes an addition to tax of 5% per month of the amount of tax required to be shown on the return, not to exceed 25%, for failure to file a return on the date prescribed unless the taxpayer can establish that the failure is due to reasonable cause and not due to willful neglect. To prove reasonable cause for a failure to timely file, the taxpayer must show that he exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time. Crocker v. Commissioner, 92 T.C. 899, 913 (1989). The determination of whether reasonable cause exists is based on all the facts and circumstances. Estate of Hartsell v. Commissioner, T.C. Memo. 2004-211, 2004

**[*15]** Tax Ct. Memo LEXIS 221; <u>Perez v. Commissioner</u>, T.C. Memo. 1988-464, 1988 Tax Ct. Memo LEXIS 499, at *24.

Petitioner's 2006 Federal income tax return was due April 17, 2007. Petitioner filed his 2006 return on September 19, 2011. Therefore, respondent has satisfied his burden of production with respect to the section 6651(a)(1) addition to tax under section 7491(c).

Petitioner argues that he was unable to timely prepare and file his 2006 tax return because he temporarily worked in New Orleans in the wake of Hurricane Katrina. Petitioner further argues that he traveled back and forth between New Orleans and Tennessee during 2005 and 2006, which caused his necessary records to be in different places--namely, in New Orleans and in the custody of Ms. Marshall in Tennessee. This Court has previously held that traveling related to a busy work schedule does not constitute reasonable cause for the untimely filing of a tax return. See <u>Crittenden v. Commissioner</u>, T.C. Memo. 2003-186, 2003 Tax Ct. Memo LEXIS 186, at *4. Furthermore, petitioner acknowledged that, at the latest, he had all necessary documents to file his 2006 tax return by 2008. Nonetheless, petitioner failed to file his 2006 tax return until September 19, 2011. Petitioner has not demonstrated that he exercised ordinary business care and prudence that would qualify him for relief from the section 6651(a)(1) addition to

[*16] tax.  Consequently, we find that petitioner has not met his burden, and we will sustain respondent's determination under section 6651(a)(1).

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

Decision will be entered for respondent as to the deficiency and the addition to tax under section 6651(a)(1), and for petitioner as to the accuracy-related penalty.